## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

BRUCE ROWAN,                              :
                                          :
          Petitioner,                     :
                                          :
     v.                                   :        Civil Action No. 19-576-CFC
                                          :
ROBERT MAY, Warden,                       :
and ATTORNEY GENERAL OF THE               :
STATE OF DELAWARE,                        :
                                          :
          Respondents.                    :

---

## <u>MEMORANDUM OPINION</u>

Bruce Rowan. *Pro Se* Petitioner.


Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.


February 8, 2022
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to

28 U.S.C. § 2254 filed by Bruce Rowan.  (D.I. 1)  The State filed an Answer in

opposition, to which Petitioner filed a Reply.  (D.I. 12;  D.I. 17)  For the reasons

discussed, the Court will deny the Petition.

## I.   BACKGROUND

> In January 2009, when [Petitioner] was 41 years old, he began
> a sexual relationship with Jane Carson [a pseudonym], who
> told [Petitioner] she was 23, but actually was 16 years old.  In
> April 2009 Carson became pregnant with [Petitioner's] child
> and [Petitioner] moved in with her. Shortly after becoming
> pregnant, Carson told [Petitioner] her real age.  [Petitioner]
> moved out and began a relationship with another woman.
> Carson then contacted the police.  After the baby was born, a
> DNA test confirmed that [Petitioner] is the father.
>
> On October 30, 2009, [Petitioner] was arrested and arraigned
> at the police station via videophone connection with the
> Justice of the Peace Court.  The court faxed [Petitioner] a
> bond form, which he signed, that included an order prohibiting
> contact between [Petitioner] and Carson. [Petitioner] was
> incarcerated in default of $201,000 cash bail.  He was indicted
> on December 7, 2009, and the Superior Court issued a
> summons ordering [Petitioner] to be present at his
> arraignment on December 17, 2009. [Petitioner's] counsel
> was not available on that date, and the arraignment was
> passed to the initial case review on December 28, 2009.
>
> On December 22, 2009, [Petitioner] was released from prison
> based on a disposition form submitted by the Court of
> Common Pleas—apparently in error. At the December 28
> arraignment and case review, bond was set at $270,000 cash.
> [Petitioner] was unable to post bond and again was
> incarcerated.  Neither the court nor the State addressed the
> no-contact order.

*Rowan v. State*, 45 A.3d 149 (Table), 2012 WL 1795829, at *1 (Del. May 16, 2012),

*revised* (May 18, 2012).  In December 2010, a Delaware Superior Court jury convicted

Petitioner of continuous sexual abuse of a child, five counts of fourth degree rape, and fifty-six counts of breach of conditions of release. *See State v. Rowan*, 2017 WL 5665032, at *1 (Del. Super. Ct. Nov. 21, 2017). On January 27, 2011, the Superior Court sentenced Petitioner as a habitual offender to a total of 395 years of incarceration suspended after serving 120 years, for probation. *See id.* The Delaware Supreme Court affirmed Petitioner's convictions on direct appeal. *See id.*

In March 2013, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 12 at 2; D.I. 13-1 at 5, Entry No. 52) The Superior Court rejected the Rule 61 motion as non-conforming. Petitioner filed a new *pro se* Rule 61 motion on May 15, 2013, and the Superior Court appointed counsel to represent Petitioner in his Rule 61 proceeding. (D.I. 12 at 2) On July 29, 2015, appointed postconviction counsel filed a non-merits memorandum of law and a motion to withdraw as counsel. A Delaware Superior Court Commissioner granted postconviction counsel's motion to withdraw on October 27, 2015, and recommended denying Petitioner's Rule 61 motion on November 21, 2017. *See Rowan*, 2017 WL 5665032, at *6. The Superior Court adopted the Commissioner's Report and Recommendation, and denied the Rule 61 motion on April 13, 2018. (D.I. 13-9 at 36) Petitioner appealed that decision *pro se*, and the Delaware Supreme Court affirmed the Superior Court's decision on December 10, 2018. *See Rowan v. State*, 198 A.3d 725 (Table), 2018 WL 6505996 (Del. Dec. 10, 2018).

2

## II.    GOVERNING LEGAL PRINCIPLES

### A.  The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism."  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003).  Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971).  AEDPA states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

3

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity, gives "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct appeal in the correct procedural manner, the claim is exhausted and the petitioner does not need to raise the same issue again in a state post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997).

If a petitioner presents unexhausted habeas claims to a federal court, and further state court review of those claims is barred due to state procedural rules, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S.

4

255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[1] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States,* 523 U.S. 614, 623 (1998); *Murray,* 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial,"

---

[1]*Murray,* 477 U.S. at 496.

showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *See Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolved the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1);

6

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner asserts three Claims in his timely-filed Petition: (1) there was insufficient evidence to convict him of fourth degree rape (D.I. 3 at 17) and violating the conditions of his release (D.I. 3 at 25); (2) defense counsel provided ineffective assistance by failing to object to the absence of a jury instruction about "mistake of age/fraudulent concealment"; and (3) Petitioner was denied his Sixth Amendment right to counsel when he was not advised of any conditions related to his mistaken release from prison on December 22, 2009.

### A.   Claim One:  Insufficient Evidence of Intent

In Claim One, Petitioner asserts that the State presented insufficient evidence of his intent for the fourth degree rape charges and the breach of conditions of release charges.  The Delaware Supreme Court denied slight variations of these arguments in Petitioner's direct and post-conviction appeals, and implicitly held that there was sufficient evidence to support Petitioner's convictions.[2]  Consequently, Claim One will

---

[2]On direct appeal, Petitioner argued that his breach of conditions convictions should be set aside because the no-contact condition had been implicitly discharged. *See Rowan*, 2012 WL 1795829, at *1. The Delaware Supreme Court rejected the argument as factually and legally meritless. *Id.* Petitioner raised the argument again in his Rule 61 proceeding, and both the Superior and Delaware Supreme Courts rejected it as formerly adjudicated under Rule 61(i)(4). *See Rowan*, 2018 WL 6505996, at *2. Petitioner challenged his fourth degree rape conviction in his Rule 61 proceeding by arguing that Carson's fraudulent concealment of her age created a reasonable doubt of his guilt.

only warrant relief if the Delaware Supreme Court's decisions were either contrary to, or an unreasonable application of, clearly established federal law. *See Orie v. Sec'y Pa. Dep't Corr.*, 940 F.3d 845, 854 (3d Cir. 2019) (noting that habeas deference is warranted when the state court's ruling implicitly addressed the merits of the petitioner's constitutional argument).

The United States Supreme Court precedent governing Petitioner's insufficient evidence claim is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

Turning to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and

---

*See Rowan*, 2018 WL 6505996, at *2. Both the Superior and Delaware Supreme Courts rejected that argument. *See id.*

8

nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Delaware Supreme Court did not specifically identify or apply *Jackson* and its progeny when implicitly holding that there was sufficient evidence to support Petitioner's convictions for fourth degree rape and breach of conditions of release. Nevertheless, the Delaware Supreme Court's decision was not contrary to *Jackson*, because the Delaware Supreme Court properly reviewed the evidence in a manner consistent with *Jackson*.

The Court's inquiry is not over, however, because it must also determine if the Delaware state courts reasonably applied *Jackson* when denying Petitioner's instant arguments. The Court will review Petitioner's arguments *in seriatim*.

### 1. Fourth degree rape

According to Petitioner, there was insufficient evidence to convict him of fourth degree rape because the State did not prove that he knew Carson was under 18 years of age when he engaged in sexual relations with her. (D.I. 3 at 14) He asserts that Carson and her family "fraudulently concealed" her true age and he was prevented from asserting the defense that he believed Carson was 23 years old. (*Id.* at 16) In order for a jury to convict Petitioner of fourth degree rape, the State had to establish beyond a reasonable doubt that he was 30 years of age or older when he intentionally had sexual intercourse with Carson when she was under 18 years old. *See* 11 Del. Code § 770(a)(2). Contrary to Petitioner's contention, the State was not required to prove that he intended to engage in a sexual relationship with an underage victim while knowing the victim was underage. In fact, 11 Del. Code § 454 provides, in relevant part:

9

> [I]t is no defense for an offense or sentencing provision
> defined in this title or in Title 16 or 31 which has as an element
> of such offense or sentencing provision the age of the victim
> that the accused did not know the age of the victim or
> reasonably believed the person to be of an age which would
> not meet the element of such offense or sentencing provision
> unless the statute defining such offense or sentencing
> provision or a statute directly related thereto expressly
> provides that knowledge of the victim's age is an element of
> the offense or that lack of such knowledge is a defense.

11 Del. Code § 454 (2010).

The jury in Petitioner's case was presented with the following evidence: (1)
Carson's testimony that she engaged in sexual intercourse with then 41-year old
Petitioner when she was 16 years old; (2) Carson's testimony that she became
pregnant with Petitioner's child; and (3) DNA testing and analysis confirming that
Petitioner is the father of Jane's child.  Pursuant to well-settled Delaware law, "a victim's
testimony alone, concerning alleged sexual contact, is sufficient to support a guilty
verdict if it establishes every element of the offense charged." *Farmer v. State*, 844
A.2d 297, 300 (Del. 2004).  After viewing the aforementioned evidence in the light most
favorable to the prosecution, the Court concludes that the Delaware Supreme Court
reasonably held that the record provided sufficient evidence from which a rational jury
could have concluded that Petitioner intentionally engaged in sexual intercourse with a
victim that was under 18 years of age when Petitioner was over 30 years of age.

### 2.  Breach of conditions of release

To reiterate, on October 30, 2009, a no-contact order was issued prohibiting
Petitioner from contacting Carson.  "While not entirely clear, the record reflects that
when [Petitioner] appeared for a [Court of Common Pleas ("CCP")] preliminary hearing

10

and bond review, his $201,000 cash bail set by the J.P. Court remained in effect, but no one addressed the J.P. Court no-contact between [Petitioner] and the minor victim. Following an apparent error by CCP in its disposition form, [Petitioner] was mistakenly released pretrial from prison on December 22, 2009.  Shortly thereafter, on December 28, 2009 at his Superior Court arraignment, [Petitioner's] bond was raised to $270,000 cash and he was re-incarcerated.  At that time, [n]either the court nor the State addressed the no-contact order."  (D.I. 13-8 at 16)  Thereafter, while incarcerated, Petitioner contacted Carson via telephone, and he was subsequently charged with 56 counts of breach of condition for release.  (*Id.*)

In this sub-argument of Claim One, Petitioner asserts that the State failed to prove he "intentionally and knowingly violated [his conditions of release] by contacting the victim" after his arraignment on December 28, 2009 and second commitment to custody.  (D.I. 3 at 25, 27)  Although Petitioner acknowledges that he repeatedly contacted Carson's parents and grandmother by calling their home phone number, he contends that Carson "would insist upon talking to [him]" and "chose to forcefully communicate with [him] every time he called the house, or by mail."  (D.I. 3 at 26) Petitioner also contends that his convictions for violating the conditions of release should be reversed because his release from pretrial detention on December 22, 2009 implicitly discharged the original no-contact condition of bond and the no-contact condition was not explicitly re-imposed for his second commitment following his December 28, 2009 arraignment.

On direct appeal, the Delaware Supreme Court rejected as meritless Petitioner's argument that the no-contact condition in the first bond was implicitly discharged when

11

the Superior Court set a $270,000 cash bond without explicitly re-imposing or discussing any conditions from his first bond. *See Rowan* 2012 WL 1795829, at *1-2. The Superior Court rejected this same argument in his Rule 61 proceeding, holding that "it was without a legal basis and that it essentially asked the Court to nullify Delaware statutes which prescribed [Petitioner's] conduct. This claim is frivolous." *Rowan*, 2017 WL 5665032, at *5. The Delaware Supreme Court affirmed that decision, stating that it found "no error of law or abuse of discretion." *Rowan*, 2018 WL 6505996, at *2.

In order for the jury to convict Petitioner of breaching the conditions of release, the State had to prove beyond a reasonable doubt that Petitioner knowingly breached any condition of bond imposed in connection with his bail. *See* 11 Del. Code § 2109. During Petitioner's trial, the jury was presented with Carson's testimony that she received two to three calls per week from Petitioner while he was incarcerated after December 28, 2009. (D.I. 13-2 at 135-36) Many of these prison phone calls were recorded and played at trial. (D.I. 13-2 at 200-208)

The Court rejects Petitioner's two arguments as to why he believes the State failed to establish the elements of the "breach of conditions of release" offenses. First, the no-contact statute – § 2109(a) – provides: "If the defendant is committed in lieu of bail, the court may require such defendant, while in custody, to have no contact with the victim or the victim's family." 11 Del. Code § 2019(a). Since the language of § 2109 focuses on the defendant's actions, not the victim's, Carson's reactions to Petitioner's phone calls did not excuse or vitiate Petitioner's state of mind of knowingly or intentionally violating the no-contact order.

12

Second, on direct appeal, the Delaware Supreme Court explicitly rejected as factually and legally meritless Petitioner's contention that the Superior Court implicitly discharged the prohibitions in the original no-contact order during his December 28, 2009 arraignment by failing to explicitly reinstate those prohibitions when it imposed a $270,000 cash bond:

> [Petitioner] offers no authority for his position, which ignores both the facts and the law. When he was arraigned on December 28, 2009, the State asked the court to reinstate the bond that had been imposed by the Justice of the Peace Court. Although there was no discussion about the conditions of the original bond, there is nothing in the record to suggest that the no-contact order was not included in the reinstated bond. Thus, the suggestion that the no-contact condition was discharged is not supported by the facts.
>
> [Petitioner's] argument also fails as a matter of law. When a person is charged with a crime involving child sexual abuse, the court must impose a no-contact condition, "except upon good cause shown," and that condition remains in effect "until a nolle prosequi is filed, the case is dismissed or an adjudication of not guilty is returned...." This statutory mandate requires that a no-contact order remain in place, except upon order of the court "for good cause shown," until one of the three listed events occurs. **There was no court order removing the condition, and the charges against [Petitioner] were not dismissed or *nolle prossed*. Thus, the condition continued in effect.**

*Rowan*, 2012 WL 1795829, at *1-2 (emphasis added). The Court must accept as correct the Delaware Supreme Court's factual determination, because nothing in the record or Petitioner's submissions in this proceeding clearly and convincingly rebut the state court's determination that the Superior Court's silence did not act to discharge the original no-contact prohibitions. *See* § 2254(d)(2); § 2254(e)(1). The Court also must defer to the Delaware Supreme Court's interpretation and application of Delaware

13

statutory law, because state law issues are not reviewable in federal habeas proceedings. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of federal habeas court to reexamine state-court determinations on state-law questions.") Thus, after viewing the aforementioned evidence in the light most favorable to the prosecution, and given the Court's rejections of Petitioner's arguments regarding the lack of intent, the Court concludes that the Delaware Supreme Court reasonably held that the record provided sufficient evidence from which a rational jury could have concluded that Petitioner violated the conditions of his release.

And finally, while the Court does not view Petitioner's challenge to his "breach of conditions" convictions as challenging the Delaware Supreme Court's holding on due process grounds, even if it should be construed in this fashion, the foregoing analysis demonstrates that Petitioner has failed to show that the Delaware Supreme Court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86 103 (2011).

Accordingly, the Court will deny Claim One in its entirety for failing to satisfy the standard articulated in § 2254(d).

## B. Claim Two: Ineffective Assistance of Counsel

In Claim Two, Petitioner argues that defense counsel provided ineffective assistance by failing "to move the trial court for a reasonable doubt instruction based upon fraudulent concealment by the victim." (D.I. 3 at 17) The Delaware Supreme Court denied the instant ineffective assistance of counsel argument on post-conviction appeal. Therefore, Claim Two will only warrant federal habeas relief if the Delaware

14

Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688. A court many deny an ineffective assistance of counsel claim by only deciding one of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Delaware Supreme Court correctly identified the *Strickland* standard as governing Petitioner's instant ineffective assistance of counsel contention. *See State v. Woodlin*,

15

2017 WL 6948353, at *3 (Del. Super. Ct. July 8, 2017).  As a result, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case.  *See Harrington*, 562 U.S. at 105-06.  When performing this inquiry, the Court must review the Delaware Supreme Court's denial of Petitioner's ineffective assistance of counsel allegations through a "doubly deferential" lens.  *Id.*  "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id.*  And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id.* at 101.

In this case, the Delaware Supreme Court found that Petitioner "was not prejudiced by his trial counsel's failure to advance a defense based on the alleged 'fraudulent concealment' of the victim's age by the victim and her parents."  *Rowan*, 2018 WL 6505996, at *2.  Considering that mistake as to age is not a defense to fourth degree rape under Delaware law,[3] the Court cannot conclude that Delaware Supreme Court unreasonably applied *Strickland* by finding a lack of prejudice.  Similarly, defense counsel's failure to request a jury instruction on a non-existent defense did not fall below

---

[3]*See* Del. Code § 454; *State v. Phlipot*, 64 A.3d 856, 861 (Del. Super. Ct. 2012)

objective standards of professional reasonableness. Thus, the Court will deny Claim Two for failing to satisfy § 2254(d).

To the extent the Court should liberally construe Claim Two as also asserting a stand-alone claim alleging that the Superior Court violated Petitioner's due process rights by refusing to instruct the jury on a "mistake of age/fraudulent concealment" defense, the argument is similarly unavailing. As a general rule, claims involving jury instructions in state criminal trials are matters of state law, and are only cognizable on federal habeas review if the instructions are so fundamentally unfair that they deprive the petitioner of a fair trial and due process. *See Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Estelle*, 502 U.S. at 71-72 ("[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief."). The relevant question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violated due process ..., not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Martin v. Warden, Huntingdon State Correctional Inst.*, 653 F.2d 799, 809 (3d Cir.1981). An "error of state law in [jury] instructions" will only be "meaningful in [a] habeas corpus action" if there is "a federal requirement that jury instructions on the elements of an offense [...] must include particular provisions," or the petitioner "demonstrate[s] that the jury instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 111 (3d Cir. 1997).

As previously explained, Petitioner's "mistake of age/fraudulent concealment" defense is not recognized as a matter of Delaware state law. There also is no clearly established federal right to a jury instruction on a "mistake of age/fraudulent

17

concealment" defense to a charge of sexual intercourse with a minor. *See United States v. Wilcox*, 487 F.3d 1163, 1174 (8th Cir. 2007) ('federal courts uniformly have rejected claims [...] that such a defendant has a constitutional right to the defense that he made a reasonable mistake as to the victim's age.") (collecting cases); *see also Morissette v. United States*, 342 U.S. 246, 251 n.8 (1951) (noting that common-law commentators recognize statutory rape as an exception to general principles of criminal intent); *United States v. Brooks,* 841 F.2d 268, 269-70 (9th Cir. 1988) (federal constitution does not require that statutory rape defendant be allowed to assert defense of reasonable misstate of fact as to the victim's age). Thus, to the extent Petitioner challenges the correctness of the Superior Court's failure to instruct the jury on a "mistake of age/fraudulent concealment" defense, he has failed to present an issue cognizable on federal habeas review.

Accordingly, the Court will deny Claim Two as meritless.

## C. Claim Three: Sixth Amendment Denial of Counsel

In his final Claim, Petitioner contends that the absence of counsel overseeing his December 22, 2009 release and/or counsel's failure to inform him that the no-contact prohibition in his October 2009 order remained in effect even after his December 22, 2009 release constituted a breakdown in the adversarial process as described in *United States v. Cronic*, 466 U.S. 648 (1984). (D.I. 3 at 29-31) The State contends that Claim Three should be dismissed as procedurally barred due to Petitioner's failure to exhaust state remedies. The Court is not persuaded. While not entirely clear, it appears that Petitioner's Rule 61 motion only challenged the trial court's failure to dismiss the breach of conditions charges and did not present any argument concerning defense counsel's

absence and/or performance with respect to the breach of conditions charges.  On post-conviction appeal, however, Petitioner did argue that his counsel's failure in December 2009 to specifically inform him that the no-contact order imposed on October 30, 2009 remained in effect until his trial amounted to *per se* ineffectiveness under *Cronic*.  (D.I. 13-7 at 25-30; D.I. 13-8 at 15, 17)  The Delaware Supreme Court concurred with the Superior Court's conclusion that Petitioner's challenge to his breach of conditions convictions was barred for being formerly adjudicated, but did not address the *Cronic* argument in its decision affirming the Superior Court's judgment.  This Court has consistently held that the Delaware state courts' dismissal of a claim as barred under Rule 61(i)(4)'s "former adjudication" standard constitutes an adjudication on the merits for federal habeas purposes.  *See Trice v. Pierce*, 2016 WL 2771123, at *4 n.4 (D. Del. May 13, 2016); *Cone v. Bell*, 556 U.S. 449, 466 (2009) ("A claim is procedurally barred when it has not been fairly presented to the state courts for their initial consideration – not when the claim has been presented more than once.").  Given these circumstances, the Court will review Claim Three under § 2254(d)(1) to determine if the Delaware state courts' denial of the Claim was contrary to, or an unreasonable application of, clearly established federal law.

As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland*, namely, whether defense counsel's actions constituted deficient performance and whether the petitioner was prejudiced by that performance. *See supra* at Section III.B.  In *United States v. Cronic*, however, the United States Supreme Court articulated a very limited exception to *Strickland*'s prejudice requirement, holding that there are three situations in which

19

prejudice caused by an attorney's performance will be presumed: where the defendant is completely denied counsel at a critical stage; where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" or where the circumstances are such that there is an extremely small likelihood that even a competent attorney could provide effective assistance, such as when the opportunity for cross-examination has been eliminated. *Cronic*, 466 U.S. at 659 & n. 25. With respect to exception two, the *Cronic* presumption of prejudice only applies when counsel has completely failed to test the prosecution's case throughout the entire trial. *See Bell*, 535 U.S. at 697.

In this proceeding, Petitioner contends that "the record is void of any counsel assuring [that Petitioner] understood his release on December 22, 2009 came with conditions imposed by the court [...]. Nothing in the § 2104(b) order shows [Petitioner] had counsel or whether he signed any conditions for his release after October 30 2009." (D.I. 3 at 30) Specifically, he argues:

> [I]t is difficult to imagine a more prejudicial course for the State to deny counsel altogether then claim [Petitioner] breached the conditions of his release 56 times knowing he had no counsel on December 22, 2009 to inform him of the court's new § 2104(b) conditions imposed before his release.
>
>    *     *     *
>
> The court and State relied upon the conditions imposed by the J.P Court while [Petitioner] was incarcerated. However, the Superior Court was required by § 2104(b) to hold a second bond hearing and impose "new conditions of release" in conjunction with § 2108 when [Petitioner] was subsequently released by mistake. So, [Petitioner] could not have relied upon the J.P. court's "conditions" imposed because he was released by the Superior Court without conditions § 2104(b) and without ever seeing a "breach of conditions for release agreement" in Superior Court."

(D.I. 3 at 33-34)

The Court construes Petitioner's convoluted assertions as presenting two possible arguments. In his first argument, Petitioner contends that the absence of counsel on December 22, 2009 – the day of his mistaken release – deprived him of his Sixth Amendment right to defend against the charges against him and created a "breakdown in the adversarial process" as contemplated in *Cronic*. (D.I. 3 at 32, citing *Cronic*, 466 U.S. at 662). The Court liberally construes this subargument of Claim Three as either alleging that defense counsel's physical absence at the time of his release or the Superior Court's failure to appoint counsel to oversee his release constituted a complete denial of counsel during a critical stage of his trial warranting an automatic reversal of his convictions for breaching the conditions of release. Petitioner's argument is unavailing. Notably, nothing in the record indicates that Petitioner appeared before a court on December 22, 2009. Instead, it appears that Petitioner was directly (but mistakenly) released from prison on that day, and he did not appear before a court again until December 28, 2009 for a bond hearing in the Superior Court. (D.I. 13-2 at 73) Since Petitioner's release from prison on December 22, 2009 was not a part of his criminal proceeding, he cannot demonstrate that he was deprived counsel during one of *Cronic*'s critical stages.

Even if the release on December 22, 2009 should be considered significant for purposes of a *Cronic* analysis, or if Petitioner did not mean to identify December 22, 2009 as the relevant event but, rather, some other court appearance that occurred between October 2009 and December 28, 2009, Petitioner must demonstrate that the absence of counsel and/or counsel's failure to apprise him that the condition of his October 2009 no-contact order continued up until trial, affected the reliability of the trial

21

process, and/or resulted in a failure to subject the prosecution's case to adversarial testing. *See Cronic*, 466 U.S. at 659-67; *see also Ditch v. Grace*, 479 F.3d 249, 256 (3d Cir. 2007) (clarifying that the *Cronic* presumption of prejudice applies only in cases where the denial of counsel necessarily undermines the reliability of the **entire criminal proceeding** and, therefore, does not necessarily apply to the denial of counsel during a defendant's arraignment.) (emphasis added).  Petitioner has failed to satisfy this burden.  The record demonstrates that defense counsel tried the case and defended Petitioner against all the charges in the indictment, including the several counts alleging breach of conditions of release.  Defense counsel's success in obtaining acquittals for ten counts of fourth degree rape demonstrates that defense counsel held the State to its burden of proof.  Thus, defense counsel's absence on December 22, 2009 and/or counsel's failure to inform Petitioner about the continuing condition of his October 2009 no-contact order on December 22, 2009 did not undermine the reliability of Petitioner's entire criminal proceeding.

Petitioner's second argument is not premised on *Cronic*.  Instead, Petitioner appears to argue that his release from prison on December 22, 2009 implicitly discharged the no-contact condition that had been imposed as part of his October 2009 "No Contact/Conditions of Release" Order.  He contends that the Superior Court was required to explicitly re-impose the no-contact condition during his December 28, 2009 bond hearing, and the fact that the Superior Court did not do so meant that he was not bound by a no-contact condition after December 28, 2009.

Petitioner's argument is unavailing.  Neither his mistaken release on December 22, 2009 nor the Superior Court's failure to explicitly re-impose the no-contact condition

22

on December 28, 2009 acted to discharge the no-contact condition that had been imposed in October 2009.  Courts in Delaware are statutorily required to impose a no-contact condition when granting any form of bail for defendants charged with a crime involving child sexual abuse or exploitation, and, "except upon good cause shown," the no-contact condition remains in effect "until a nolle prosequi is filed, the case is dismissed or an adjudication of not guilty is returned, whichever shall first occur, or if the defendant is adjudicated guilty by way of a plea of guilty or a conviction by court or jury, at the time of sentencing."  11 Del. Code  § 2108(b).  Once again, as the Delaware Supreme Court held on direct appeal, "There was no court order removing the condition, and the charges against [Petitioner] were not dismissed or *nolle prossed.* Thus, the condition continued in effect."  *Rowan,* 2012 WL 1795829, at *2.  Notably, Petitioner does not argue that he could have shown "good cause" for the court to remove the no-contact condition, and he never sought relief from the no-contact order during the pendency of his criminal charges.

For all these reasons, the Court concludes that Claim Three does not warrant relief.

### D. Pending Motions

Petitioner filed the following two motions during the pendency of this proceeding: (1) a Motion to Amend the Petition to include a claim that defense counsel provided ineffective assistance by failing to object to the Superior Court's use of the term "victim" in the jury instructions (D.I. 19 at 1); and (2) a Motion to Stay the Proceedings to provide Petitioner with an opportunity to return to state court to present his argument that 11 Del. Code § 770 unconstitutionally prohibits a defendant from presenting a "mistake of

23

age/fraudulent concealment" defense to a charge of fourth degree rape (D.I. 22-1 at 1).

Although Petitioner's Motion to Amend describes the claim he wishes to add to the Petition as challenging the Superior Court's use of the term "victim" in the jury instructions, the essence of this "new" argument merely reasserts Petitioner's contention that he was denied his due process right to present a" mistake of age/fraudulent concealment" defense during his trial. (D.I. 19 at 3-10) The Court has already considered and rejected this argument with respect to Claim Two. Therefore, the Court will deny Petitioner's request to amend his Petition with this duplicative argument.

As for Petitioner's Motion to Stay, a federal habeas court is only authorized to stay a habeas proceeding if a habeas petition contains both exhausted and unexhausted claims, and the petitioner's ability to file a future habeas petition after proper exhaustion in the state courts will be clearly foreclosed by the expiration of AEDPA's one-year filing period. *See Rhines v. Weber*, 544 U.S. 269 (2005); *Pliler v. Ford*, 542 U.S. 225 (2004). The instant Petition does not contain any unexhausted claims. In addition, the Court has already considered and rejected the "new" argument Petitioner wishes to present to the Delaware courts (namely, that § 770 unconstitutionally prevents a defendant from presenting a "mistake of age/fraudulent concealment" defense) in its analysis for Claim Two, and nothing in the Motion to Stay would change the Court's determination that Petitioner's "new" challenge lacks merit. As previously discussed, there is no clearly established federal right to a jury instruction on a "mistake of age/fraudulent concealment" defense to a charge of sexual intercourse with a minor. *See supra* Section III.B. In addition, the Delaware Supreme Court has

24

already upheld the constitutionality of 11 Del. Code § 762(a), which "explicitly precludes a defense based on the defendant's reasonable belief that the victim had reached the age of consent" for sexual offenses. *Pritchard v. State*, 842 A.2d 1244 (Table), 2004 WL 249419, at *1 (Del. Feb. 4, 2004). Thus, the Court will deny Petitioner's request to stay the instant proceeding to re-litigate a previously determined issue.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court concludes that the instant Petition and Motions must be denied. An appropriate Order will be entered.

25